SHERMAN N. COPELIN, JR., ET AL.                    CIVIL ACTION

VERSUS                                             NO. 06-4115

STATE FARM INSURANCE                               SEC. "B"(3)

### ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment
(Rec. Doc. 117). The motion is opposed. (Rec. Doc. 131). After
review of the pleadings and applicable law, and for the reasons
that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment
(Rec. Doc. 117) is **DENIED**.

### BACKGROUND

Plaintiffs' home located at 5890 Eastover Drive in east New
Orleans was damaged during Hurricane Katrina. In effect at the
time of the hurricane were Plaintiffs' homeowners' insurance policy
issued by Defendant State Farm and a flood policy, which did not
include contents coverage, issued through Fidelity National
Insurance. Plaintiffs' policy with State Farm included "Deluxe"
All List Coverage in the amount of $997,800 for the dwelling and
$99,780 for the building extension, and $843,600 for contents, with
24 months ALE coverage under the Deluxe policy. Plaintiffs assert
that their home was first damaged by hurricane force winds which

toppled the chimney and damaged the roof and that the roof failure allowed the entry of rainwater into the home. The house also received approximately five feet of flood waters.

Plaintiffs evacuated to Destin, Florida and appear to have remained in Destin until purchasing a home on Louisiana Ave. in New Orleans in December 2005. The parties agree that Plaintiffs timely notified Defendant State Farm via telephone that they had sustained damages from Katrina. On or about October 12, 2005, Plaintiffs caused to be issued to Defendant a Letter of Representation, and Defendant was advised that Plaintiffs were unable to occupy their residence. Plaintiffs submitted a Sworn Statement and Proof of Loss to Defendant on October 26, 2005. The Proof of Loss stated the policy limits, but did not provide an inventory or quantify loss. Plaintiff specifically stated in the Proof of Claim:

> I am not able to estimate the amount of the damage or fix an amount to cover the loss, nor provide an inventory of personal property, ...[states coverage limits].... Nor am I able to quantify the Loss of Use or Additional Coverages as those terms are defined in the policy, the charges have not been fixed nor are they currently determinable.

(Rec. Doc. 131-2 at 1).

Defendant State Farm inspected the property on October 27, 2005, and the flood insurer adjuster inspected the property on

November 10, 2005.[1]  The flood insurer subsequently paid Plaintiffs the policy limit of $250,000.  Defendant State Farm determined dwelling loss due to wind at $57,398.98[2] and $0 for both personal property and loss of use; Defendant paid Plaintiffs $34,942.98 after deductible[3] plus an advanced payment of $2,500[4].  Plaintiffs re-urged their ALE claim in both November and December 2005.  In a letter dated January 25, 2006, Defendant State Farm rejected Plaintiffs' ALE claim, stating that the damage rendering the home uninhabitable was the result of flood, an excluded loss under the policy.

Defendant has two main arguments: 1) Plaintiffs breached their post-loss duties and are therefore barred from recovery and 2) Plaintiffs cannot recover for wind damage because they have not and cannot prove the amount of independent damage attributable to wind. Defendant asserts that Plaintiffs failed to make any temporary repairs to the roof or replace the roof after Defendant paid them

---

[1] Plaintiffs reference the photographs of the property taken by the flood inspector as evidence of damages.

[2] Defendant asserts that this covered replacement of the roof and chimney, the cabana and awning area, light fixtures around the property, bridge repairs, clearing of debris in the pool, and fence repairs.

[3] Payment made on December 9, 2005.

[4] Payment made on September 6, 2005.

to do so and presents as supporting evidence Plaintiffs' failure to produce receipts or invoices for the repair, reports and photographs from inspections[5] of the property conducted by Defendant's adjusters, and photographs taken by the flood adjuster. Defendant argues that this alleged failure to repair constitutes a breach of Plaintiffs' post-loss duty to mitigate damages by "protecting the property from further damage or loss and mak[ing] reasonable and necessary temporary repairs required to protect the property." (Policy, Section I-Conditions, Rec. Doc. 117-6 at 16).

Defendant further argues that Plaintiffs breached their post-loss contractual duty "to provide verifiable documentation of the cause of their losses, the extent of their covered losses, or receipts in support of their claims" and references Section I-Conditions of the policy which states in pertinent part:

> 2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:
> ...
> (c) prepare an inventory of damaged or stolen

---

[5]Defendant references the inspection of and photographs taken by its adjuster, Ronald Horst, on October 27, 2005 (Rec. Doc. 117, Ex. D - photograph of rear roof); photographs of the flood adjuster dated November 10, 2005 (Rec. Doc. 117, Ex. E - photo of rear roof); James Danner's April 2007 photographs (Rec. Doc. 117, Ex. F-photo of rear roof); and a November 2008 photo of the rear roof taken by Plaintiff's engineer, James Gilbert (Rec. Doc. 117, Ex. G - photo of rear roof).

> personal property.  Show in detail the
> quantity, description, actual cash value
> and amount of loss.  Attach to the
> inventory all bills, receipts and related
> documents that substantiate the figures
> in the inventory.

(Rec. Docs. 117-2 at 7; 117-6 at 12).  Defendant asserts that the lists (Rec. Doc. 117-6, Exs. H, J) submitted by Plaintiffs are inadequate, specifically notes that the revised list does not indicate whether the amounts included are actual cash value or replacement cost, and alleges that the revised list fails to describe the name brands, purchase dates, quantities, or condition of the majority of items claimed.

Defendant argues that Plaintiffs' alleged failure to mitigate and allegedly deficient contents list bar recovery because they constitute noncompliance with the policy.  Defendant cites Louisiana case law and federal cases from the Eastern District of Louisiana for the legal principle that "compliance with insurance policy provisions [is] a condition precedent to recovery" and that "failure of an insured to cooperate with an insurer has been held to be a material breach of the contract and a defense to a suit on the policy."  *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685, 688 (La. App. 4th Cir. 1992); *see also Mosadegh v. State Farm Fire & Ca. Co.*, No. 07-427, 2008 WL 4544361, at *5 (E.D.La. Oct. 8, 2008).

Defendant further cites *Lee v. United Fire:* "failure to cooperate is manifested by refusal to submit to an examination under oath . .. or a refusal to produce documents." *Lee,* 607 So. 2d at 688; see also *Mosadegh*, 2008 WL 4544361, at *5. Defendant also cites 14 Couch on Insurance §199 (3d ed. 1999), which states, "breaching a post-loss duty generally precludes coverage and releases the insurer from its responsibilities."

Defendant's second main argument is that Plaintiffs cannot recover for wind damage because, Defendant asserts, Plaintiffs allegedly have not and cannot prove the amount of independent damage attributable to wind. Defendant asserts that Coverage A is an "open peril" dwelling policy and that Coverage B is a "named" peril personal property policy. Defendant argues that both coverages require Plaintiffs to segregate the amount of covered losses from excluded losses. Regarding the open peril policy, Defendant discusses the shifting burden that requires Defendant to present evidence that Plaintiffs' losses were caused by an excluded peril but then shifts the burden back to Plaintiff "to show either that their losses do not fall within the exclusion, or alternatively, to segregate the amount of their covered losses from excluded losses." *Hyatt v. State Farm Ins. Co.*, No. 06-8792, 2008 WL 544182, at *2 (E.D. La. Feb. 25, 2008).

Regarding the named peril policy, Defendant cites *Broussard v. State Farm Fire & Cas. Co.*, No. 06-8084, 2007 WL 2264535, at *2-3 (E.D. La. Aug. 2, 2007)(*citing Ferguson v. State Farm Ins. Co.*, No. 06-3966, 2007 WL 1378507, at *2 (E.D. La. May 9, 2007)), which states, "under a named peril policy, the plaintiffs are required to prove by a preponderance of the evidence that their personal property was lost or damaged due to a specified covered risk named in the policy."  Defendant further argues that "[t]o satisfy this burden, plaintiffs must prove both that their personal property was damaged as a result of the wind, and the amount of damage caused by wind" and cites *Hyatt*, 2008 WL 544182, at *3 and *Constitution State Ins. Co. v. Werner Enterprises, Inc.*, 1987 WL 4978, at *1 for support.  Defendant asserts that showing only that contents were damaged or destroyed by the hurricane is insufficient to establish covered windstorm damage and that plaintiff must show "that the loss or damage was the direct result of wind."  *Hyatt*, 2008 WL 544182, at *3.  Defendant also cites *Loyola Univ. v. Sun Underwriters Ins. Co.*, 93 F. Supp. 186, 190 (E.D. La. 195), *aff'd*, 196 F.2d 169 (5th Cir. 1952), which states:

> If the cause of the damage or destruction by
> not the direct result of the wind alone, but
> the damage or destruction by caused by a
> combination of wind and water, and the damage
> by either cannot be separated, then, there can
> be no recovery under the burden of proving the

cause of the damage, and if it fails to make
that proof, it cannot recover.

Defendant asserts that Plaintiffs have submitted no damage
estimates that segregate wind damage from flood damage for either
Coverage A or B and argue that Plaintiffs have produced no evidence
that their personal property was damaged by wind. Defendant argues
that any effort by Plaintiffs "to claim that all of their damages
are due to wind is contradicted by plaintiffs' admission that their
property was exposed to substantial flooding and their acceptance
[of] $250,000 in satisfaction of the full policy limits of their
flood policy." (Rec. Doc. 117-2 at 15). Finally, Defendant
asserts that Plaintiffs' home became uninhabitable due to the
excluded peril flood and argues that Plaintiffs are therefore not
entitled to ALE. Defendant cites *Comeaux v. State Farm Fire & Cas.
Co.*, 07-957, 2008 WL 2190826, at *5 (La. App. 5 Cir. 5/27/08), in
which the trial court found that "the extensive flood damage far
outweighed the wind damage" and that plaintiffs were unable to
return to their home because of flood damage rather than because of
plaintiffs' alternate reasons.

Plaintiffs deny Defendant's allegations that they breached
their post-loss duties and further argue that these allegations do
not bar recovery because Defendant denied Plaintiff's claim because
of flood, not because of failure to mitigate and/or inadequacy in

inventory.  Additionally, Plaintiffs emphasize that Defendant's January 25, 2006 letter rejecting Plaintiffs' ALE claim "makes it clear that the Adjustment Process had been completed." (Rec. Doc. 131 at 4).  Plaintiffs appear to rebut Defendant's segregable wind damage argument by asserting that wind damaged the house and contents before the flood and reference the testimony of State Farm's expert that wind damage occurred before the flooding.  *Id.*

Plaintiffs flatly deny Defendant's allegations that Plaintiffs failed to protect the property from further damage or loss and make necessary repairs to protect the property.  Plaintiffs reference the affidavit of David Bell, owner and manager of Developmental Partners, LLC, in which Bell testifies that Developmental Partners made temporary repairs to the roof. (Rec. Doc. 131, Ex. I).  Plaintiffs also point to the deposition of James Danner, State Farm's engineer, who testified that the property was being maintained. (Rec. Doc. 131, Ex. F).

Regarding the inadequacy of the inventory list, Plaintiffs argue that the initial Statement of Loss ("SOL") met the contractual conditions in Section I-Conditions of the policy and specifically reference 2(e)(6) which states that the inventory submitted be "to the best of [insured's] knowledge and belief." Plaintiffs assert that all information in the SOL was to the best

of their knowledge and belief and further submit that their records, including those at Plaintiff Sherman Copelin's office, were destroyed in the flood. Plaintiffs also argue that any alleged inadequacy of the inventory list does not preclude recovery because Defendant denied the claim on the basis of flood, not inadequate inventory; Plaintiffs cite *Standard Acc. Ins. Co. v. Southwestern Trading Co.*, 154 F.2d 259 (5th Cir. 1946)(applying Texas law), in support. Plaintiffs further argue that Defendant became aware of the extent of damage to the property and contents when its adjuster inspected the property[6] and cite *O'Connor v. Perry*, 1997 WL 115404 (E.D. La. 1997), in which the court denied a motion for summary judgment and noted that the adjustors visited the property and were aware fo claimed damages even though no proof of loss had been submitted. Citing the doctrine of anticipatory breach under LSA-C.C. arts. 1912, 1913 and *The Doctrine of Anticipatory Breach of Contract*, 20 La. L.Rev. 119 (1959), Plaintiffs argue that Defendant's denial of Plaintiffs' claims "constituted a breach of contract relieving Plaintiff from any further obligation to provide [a] list under the contract." (Rec. Doc. 131 at 7).

---

[6]Defendant also references the photos of the flood adjuster which show the condition of the property and the presence of contents.

Plaintiffs' opposition concludes with a section on "Money Not Spent" which references Plaintiffs' Motion in Limine #3 (Rec. Doc. 113) but does not directly address any argument in Defendant's Motion for Summary Judgment. This section of Plaintiffs' opposition appears to argue replacement cost rather than actual cash value. However, this argument only applies to Coverage A on the dwelling and Defendant raised the actual cash value versus replacement cost argument when referencing the alleged inadequacy of the inventory list.

## DISCUSSION

**A.    Summary judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate

that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

## B. Post-loss Duties

Compliance with insurance policy provisions are conditions precedent to recovery under that policy. *Lee v. United Fire & Casualty Co.,* 607 So.2d 685, 688 (La. Ct. App.1992); *see also Mosadegh v. State Farm Fire and Casualty Co.,* 2008 WL 4544361, at *3 (E.D. La. 2008). Further, "the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to suit on the policy." *Mosadegh,* 2008 WL 4544361, at *3 (*quoting Lee,* 607 So.2d at 688)(internal quotations omitted). Such failure may be manifested by "a refusal to produce documents." *Id.* However, "[w]hen an insurer denies liability for a claim, it abandons its right to compel the claimant to comply with the preliminary provisions of the policy." *Patterson v. Liberty Lloyds Ins. Co.,* 96-2168 (La.App. 4 Cir.

3/26/97), 692 So.2d 17, 19; *see also Mosadegh,* 2008 WL 4544361, at *3 . Whether a cooperation clause has been breached or not is generally a question of fact that must be determined by the facts and circumstances of each case. *Holden v. Connex-Metalna Management Consulting*, No. 98-3326, 2000 WL 1741839, at *3 (E.D. La. Nov. 22, 2000)(*citing Freyou v. Marquette Cas. Co.*, 149 So.2d 697, 699 (La. App. 4 Cir. 1/28/1963).

Defendant erroneously asserts that *Mosadegh v. State Farm Fire and Casualty Co.,* is analogous to the present case. Although both cases involve damage from Katrina to a home insured by State Farm, the similarities end there. *Mosadegh* involved an insured's refusal to submit to an examination under oath after insurer made at least two specific requests for such examination due to suspicion of fraud. Part of plaintiff insured's defense included a claim that because defendant insurer had allegedly denied plaintiff's claim, "plaintiffs' duty to cooperate had been either completely eliminated or substantially reduced." *Mosadegh*, 2008 WL 4544361, at *1. The court granted defendant's motion for summary judgment, finding that plaintiff insured was unwilling to submit to the examination and that defendant insurer made it clear that it had not denied liability . *Id*. at *3.

A second compliance case cited by Defendant, *Lee v. United*

*Fire & Casualty Co.,* is also not analogous to the present case. In *Lee*, plaintiffs repeatedly refused to produce financial information and submit sworn statements requested by the defendant insurer and repeatedly refused to comply with the court's orders that such documents be provided. The Louisiana Court of Appeals, Fourth Circuit specifically listed[7] defendant's requests to plaintiffs, court hearings and orders for production, and plaintiffs' repeated "protracted, willful, and apparently bad faith" failures to comply. *Lee*, 607 So.2d at 687.

Unlike in *Mosadegh* and *Lee*, Defendant in the present case has not presented evidence that Plaintiffs repeatedly failed to provide information requested by Defendant insurer. Although Defendant asserts in its memorandum that it made repeated requests to Plaintiffs regarding provision of documentation, Defendant does not specify when, how, or how often such requests were made or submit documentation supporting its assertion of repeated requests. Defendant insurer directly references only one possible direct request when referencing two specific lists submitted by

---

[7]The court found plaintiffs' "bad faith refusal to furnish information and documents over a period exceeding one year [was] in contravention of both the policy requirements and rules of discovery consisting of **four attempts** to take plaintiffs' sworn statements and obtain financial records pursuant to policy provisions **and five hearings in court**." *Lee*, 607 So.2d at 687 (emphasis added).

Plaintiffs; but even in that instance Defendant does not assert that it notified Plaintiffs of the inadequacy, specified the deficiencies to Plaintiffs, requested Plaintiffs to amend the list, or alleged that Plaintiff refused to do so. (Rec. Doc. 117-2 at 7). Instead, Defendant's memorandum only critiques both lists, enumerating alleged deficiencies[8]. *Id*. Defendant goes on to state, "Subsequently, on November 14, 2008 plaintiffs' counsel forwarded a revised contents list to defense counsel." *Id*. Although Defendant's memorandum critiques the November 14, 2008 revised list just as it critiques the May 10, 2008 list, Defendant still does not state that it notified Plaintiffs of these alleged deficiencies or requested correction or allege that Plaintiffs refused to respond to such a request. *Id*. at 9-10.

Unlike in *Mosadegh*, Defendant in the present case acknowledges that it denied "plaintiffs' claims for damages under the homeowner's policy ... after a determination that their losses were the result of flood." (Rec. Doc. 117-3). Additionally, the evidence presented indicates Plaintiffs' efforts to comply with the terms of the insurance contract: the parties agree that plaintiffs

---

[8]Alleged deficiences in Plaintiffs' May 10, 2008 list include alleged failure "to show in detail the quantity, description, actual cash value, and amount of loss of the contents." (Rec. Doc. 117-2 at 7).

timely notified Defendant insurer of damage due to Katrina; Plaintiffs timely submitted a SOL, which they assert was done to the best of their knowledge at the time;[9] and Plaintiffs also submitted a revised contents list with values after somehow being made aware that such information that was missing from the previous list was needed.

Although Plaintiffs' opposition cites only two cases, one applying Texas law[10] and the other an unreported opinion from the Eastern District of Louisiana,[11] Plaintiffs' opposition and the record evidence several fundamental factual disputes between the parties. Plaintiffs assert that they did the best they could to provide an adequate inventory and the evidence, including affidavits, deposition testimony, photos, and other supporting documents, indicate efforts to revise the inventory, provide descriptions and values, and to acquire supporting documentation despite the destruction of Plaintiffs' records during Hurricane

---

[9]Plaintiffs do not state personal inspection of the premises at the time of submission of their SOL and refer to the inspections of Defendant and the flood insurer to substantiate extent of damages. Hence it appears that Plaintiffs did not have direct personal knowledge of the extent of damages at the time, and it is unclear how exactly Plaintiffs learned that their property was uninhabitable.

[10]*Standard Acc. Ins. Co. v. Southwestern Trading Co.*, 154 F.2d 259 (5th Cir. 1946).

[11]*O'Connor v. Perry*, 1997 WL 115404 (E.D. La. 1997).

Katrina.[12]

Plaintiffs present similar evidence to support their claim that they performed repairs on the property. For example, although Defendant asserts that there was no evidence of a tarp or other repairs to the roof, Plaintiffs produce the affidavit of David Bell, owner and manager of Developmental Partners, LLC, who states that Developmental Partners made temporary repairs to the roof, installing either plywood and/or felt over the openings and vent covers as needed to make the roof water resistant. (Rec. Doc. 131-10 at 1). Additionally, the photos Defendant presents as evidence of the lack of repairs are extremely dark and inconclusive. Defendant also admits that Plaintiff Sherman Copelin, Jr. testified in his deposition that he paid for temporary roof repairs. Defendant argues that Plaintiff has not submitted receipts for the repairs, but Defendant cites no authority that receipts, rather than depositions and affidavits, are necessary to meet the summary judgment evidence standards of Plaintiffs. Plaintiffs also submit photos that seem to indicate some degree of maintenance and repair

---

[12]Plaintiffs indicated that their revised inventory was prepared "from memory, records, pictures, video and by reviewing prices from internet sources." (Defendant's Ex. I, Rec. Doc. 117-6 at 39). Plaintiffs also submitted a letter from the owner of Carlisle Fine Interiors as evidence of the value of "flooring, furniture, draperies and other accessories for [Plaintiffs'] home" purchased from Carlisle. (Rec. Doc. 131-11)

of the property.  (Rec. Doc. 131-9).  However, the veracity and weight of all this evidence should be considered by the jury when it considers these disputed issues of material fact.  Genuine issues of material fact exist; hence summary judgment is inappropriate regarding the issue of Plaintiffs' alleged breach of post-loss duties.

**C.  Segregating Wind Damage from Flood Damage**

Claims for loss under both "open peril" and "named peril" policies ultimately necessitate plaintiffs' segregation of covered claims from non-covered claims when the defendant insurer meets its burden of proof regarding a defense of exclusion.  With respect to "open peril" policies, "plaintiffs are required to prove the amount of segregable damage caused by the covered peril" where "a covered and a noncovered peril may have contributed to plaintiffs' loss." *Hyatt v. State Farm Ins. Co.*, No. 06-8792, 2008 WL 544182, at *2 (E.D. La. Feb. 25, 2008); see also *Broussard v. State Farm Fire & Cas. Co.*, No. 06-8084, 2007 WL 2264535, at *2-3 (E.D. La. Aug. 2, 2007) (*citing Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004); Couch on Insurance § 175:9 (3d ed. 2006)).  In a named peril policy, plaintiffs carry the burden of proving that damage to their contents was caused by a named peril.  *Hyatt*, 2008 WL 544182, at *3 (citing *Opera Boats, Inc. v. La Reunion Francaise,* 893 F.2d

103, 105 (5th Cir. 1990). As with open peril policies, if defendant insurers meet their burden when citing an exclusion defense, "the burden shifts back to plaintiffs to prove the amount of segregable damage caused by the covered peril." *Id*. It is the insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded peril. 17A Ross & Segalla § 175:9 (3d ed. 2006).

Cases cited by Defendant involved judgments made by the court after the presentation of evidence at trial. *See Comeaux v. State Farm Fire & Cas. Co.*, 07-957, 2008 WL 2190826 (La. App. 5 Cir. 5/27/08); *Preis v. Lexington Ins. Co.*, No. 07-14228, 2008 WL 2247140 (11th Cir. June 3, 2008); *Mancuso v. United States Fid. & Guar. Co.* , 209 So.2d 120, 123 (La. App. 4 Cir. 1968); and *Loyola Univ. v. Sun Underwriters Ins. Co.*, 93 F. Supp. 186, 190 (E.D. La. 195), *aff'd*, 196 F.2d 169 (5th Cir. 1952). *Mancuso v. United States Fid. & Guar. Co.* involved a claim of roof damage and subsequent water damage caused by rain entering the building through the damaged roof. Judgment was issued in favor of defendant following trial because the court found that the roof was not damaged. *Mancuso*, 209 So.2d at 123.

Although Defendant's assertion that Plaintiffs have not, at

the time the motion for summary judgment and opposition were filed, specifically listed what damages are attributable to wind and which are attributable to flood, Plaintiffs have presented deposition testimony that the wind damage occurred before the flood damage and testimony articulating how one determines whether an item was damaged by wind or flood. (See Deposition of James Danner at 41, 82-84, Rec. Doc. 131-7). Additionally, unlike in *Mancuso*, all parties in the present case agree that the roof and chimney were damaged by wind. Defendant's argument that any effort by Plaintiffs "to claim that all of their damages are due to wind is contradicted by plaintiffs' admission that their property was exposed to substantial flooding and their acceptance [of] $250,000 in satisfaction of the full policy limits of their flood policy" is asserted in Defendant's section on personal property. (Rec. Doc. 117-2 at 15). The argument seems misplaced and overstated. Defendant stated in the Factual Background section of its memo that Plaintiffs' flood policy did not include contents coverage. (Rec. Doc. 117-2 at 2). Hence, Plaintiff's acceptance of payment of the flood policy limit of $250,000 on the building does not inherently preclude a claim that personal property damage was caused by wind, which damage Plaintiffs assert occurred before any flooding.

Genuine issues of material fact remain regarding which damages

were caused by wind and which were caused by flood. "The solution of the difficult question of what items of proved damages were within, and which were without, the coverage of the policy [is] primarily for the trier of facts." *Loyola*, 196 F.2d 169, 170 (5th Cir. 1952). Genuine issues of material fact also remain regarding Plaintiffs' alleged breach of their post-loss duties. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. 117) is **DENIED**.

New Orleans, Louisiana this 12th day of February, 2009.

_____
                    IVAN L.R. LEMELLE
              UNITED STATES DISTRICT JUDGE